## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

DEONDRE ANDREWS,                                    Case No. 1:13-cv-727
     Petitioner,

                                   Barrett, J.
     vs.                                           Bowman, M.J.

WARDEN, LEBANON                                     **REPORT AND**
CORRECTIONAL INSTITUTION,                           **RECOMMENDATION**
     Respondent.

Petitioner, an inmate in state custody at the Lebanon Correctional Institution in Lebanon, Ohio, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, which he later amended.   This matter is before the Court on the petition as amended (Docs. 1, 6); respondent's return of writ (Doc. 10); and petitioner's "Traverse" in reply to the return of writ (Doc. 11).

## I.  PROCEDURAL HISTORY

### State Trial Proceedings

On March 5, 2009, the Hamilton County, Ohio, grand jury returned an indictment in Case No. B0901344 charging petitioner with one count of aggravated burglary in violation of Ohio Rev. Code § 2911.11(A)(2) (Count 1) with firearm specifications; one count of felonious assault in violation of Ohio Rev. Code § 2903.11(A)(2) (Count 2) with firearm specifications; and one count of having weapons while under disability in violation of Ohio Rev. Code § 2923.13(A)(2) (Count 3).  (*See* Doc. 10, Ex. 1).  The charged offenses occurred in Hamilton County on or about September 14, 2008.  (*See id.*).  The victim of the felonious assault offense charged in Count 2 was Troy Davis.  (*Id.*).

It appears from the record that petitioner failed to appear for trial in Case No. B0901344,

which was scheduled to commence in April 2010 following numerous continuances.  (*See id.*, Ex. 11, p. 2 & Ex. 28).  The trial court issued a warrant for petitioner's arrest and granted a motion filed by petitioner's court-appointed attorney to withdraw as petitioner's counsel.  (*Id.*).

It appears from on-line docket records maintained by the Hamilton County Clerk of Courts that petitioner failed to appear for trial in another criminal case (Case No. B0906649-A), which was also set for trial in April 2010.[1]  In that case, the Hamilton County grand jury returned an indictment on October 2, 2009 charging petitioner and three co-defendants—Ronald Hart, Christopher Clemons and Terrel Twitty—with an aggravated burglary offense, with firearm specifications, that occurred on or about September 25, 2009.  Each defendant was also separately charged with having weapons while under disability.  As in Case No. B0901344, when petitioner failed to appear for trial in April 2010, a warrant was issued for his arrest, and petitioner's counsel was permitted to withdraw from the case.

In August 2010, petitioner was arrested and returned to state custody.  Soon thereafter, another indictment was returned by the Hamilton County grand jury in Case No. B1005259-A, charging petitioner with new criminal offenses.  (*See id.*, Ex. 8).  The on-line docket record for Case No. B1005259 reflects that petitioner was charged in that case with five criminal offenses, including one count of felonious assault and one count of attempted murder with firearm specifications, occurring on or about August 5, 2010.[2]  August 5, 2010 was also the date of petitioner's arrest on the warrants issued in Case Nos. B0901344 and B0906649-A.[3]

Roxanne Dieffenbach was appointed to serve as petitioner's counsel in the three cases pending before the Hamilton County Common Pleas Court (Case Nos. B0901344, B0906649-A

---

[1] *See* https://courtclerk.org/case_summary.asp?sec=history&casenumber=B0906649.

[2] *See* https://courtclerk.org/case_summary.asp?sec=history&casenumber=B1005259-A.

[3] *See* https://courtclerk.org/case_summary.asp?sec=history&casenumber=B0901344; https://courtclerk.org/case_summary.asp?sec=history&casenumber=B0906649-A.

and B1005259-A). (*See id.* & Ex. 24, Trial Tr. 22, 26-27; *see also* Ex. 26, Trial Tr. 49). On

January 24, 2011, which was the date scheduled for trial on "[a]ll matters," petitioner presented a

*pro se* motion requesting that Dieffenbach be removed as his counsel in Case No. B1005259 and

that another attorney be appointed to represent him. (*See id.*, Ex. 24, Trial Tr. 22-23, 27).[4]

Petitioner stated as support for his request that Dieffenbach was "not listening" to him and

"couldn't get [him] what [he] ask[ed] for." (*Id.*, Trial Tr. 23). Dieffenbach stated that she had

advised her client when he asked her "about a couple of things" that "one thing wasn't possible"

due to the lack of available information at that time and that "the other thing really wouldn't

make any sense because it was a motion to dismiss." (*Id.*, Trial Tr. 25-26). She indicated,

however, that communications had "[n]ot necessarily" broken down between her and petitioner

and stated that she was willing to continue working with petitioner. (*Id.*). The trial court then

denied petitioner's motion to remove Dieffenbach as his counsel and continued the trial date to

February 14, 2011. (*Id.*, Trial Tr. 26, 29).

It appears from the record that petitioner next proceeded to trial before a jury in Case No.

B1005259-A, which found him guilty on three of the five charges—*i.e.*, failing to comply with

an order or signal of a police officer; obstructing official business; and inducing panic. (*See id.*,

Ex. 8). With respect to the remaining two charges, the jury acquitted petitioner on the attempted

murder count and was unable to reach a verdict on the felonious assault charge.[5] After a

sentencing hearing held on February 22, 2011, the trial court issued an entry on March 16, 2011

sentencing petitioner to an aggregate prison term of seven and one-half (7 ½) years. (*Id.*).[6]

---

[4] The *pro se* written motion to remove counsel was docketed on January 28, 2011 and placed on file in Case No. B1005259-A. *See* https://courtclerk.org/case_summary.asp?sec=history&casenumber=B1005259-A.

[5] *See* https://courtclerk.org/case_summary.asp?sec=history&casenumber=B1005259-A .

[6] Petitioner's aggregate prison sentence in Case No. B1005259-A was later changed to seven (7) years following a resentencing hearing in accordance with a remand order issued by the Ohio Court of Appeals, First Appellate District. *See* https://courtclerk.org/case_summary.asp?sec=history&casenumber=B1005259-A .

Thereafter, on April 4, 2011, petitioner waived his right to a jury trial and entered a guilty plea in Case No. B0901344 to the felonious assault charge and three-year firearm specification attached to that count in exchange for (1) the dismissal of the remaining charges and specifications, (2) a recommended agreed-to sentence of seven (7) years to be served consecutively to the sentence imposed in Case No. B1005259-A, and (3) the prosecutor's agreement "not to . . . retry the defendant in the previously hung matter."[7]  (*Id.*, Exs. 3-5 & Ex. 25, Trial Tr. 32-34).   In the written plea entry, executed by petitioner and filed with the trial court, petitioner stated in pertinent part:

> I understand the nature of these charges and the possible defenses I might have.  I am satisfied with my attorney's advi[c]e, counsel and competence.  I am not under the influence of drugs or alcohol at this time.  I have not been forced or threatened in any way to cause me to sign and offer this plea.
>
> I understand by pleading guilty, I give up my constitutional rights to a jury trial, to confront witnesses against me, to have subpoenaed witnesses in my favor, and to require the state to prove my guilt beyond a reasonable doubt at a trial at which I cannot be compelled to testify against myself.
>
> I understand that my plea of guilty is a complete admission of my guilt of the charge(s) against me. . . .  I understand my right to appeal a maximum sentence, my other limited appellate rights, and that any appeal must be filed within 30 days of my sentence.
>
> ****
>
> I have read this form and I knowingly, voluntarily and intelligently enter this guilty plea.

(*Id.*, Ex. 3).   The plea entry also contained the following signed statement by petitioner's counsel:  "I have explained to the defendant prior to his/her signing this plea, the charge(s) in the indictment or information, the penalties therefor and his/her constitutional rights in this case.  I represent that, in my opinion, the defendant is competent to enter this plea and now does so

---

[7] It appears from the on-line docket record for Case No. B1005259-A that the felonious assault charge, on which the jury was unable to reach a verdict, was in fact dismissed per the request of the prosecuting attorney on February 8, 2012.  *See* https://courtclerk.org/case_summary.asp?sec=history&casenumber=B1005259-A .

knowingly, intelligently and voluntarily." (*Id.*).

At the plea hearing held the same date, petitioner affirmed in open court that the following statement of facts regarding the felonious assault charge and attached firearm specification was "true and accurate":

> Deondre Andrews, on or about September 14, 2008, Hamilton County, State of Ohio, knowingly caused or attempted to cause physical harm to Troy Davis by means of a deadly weapon, to wit: A firearm.

> Also, the defendant did have on or about his person or under his control a firearm while committing the offense of felonious assault, displayed the firearm, brandished the firearm, indicated he possessed the firearm, used it to facilitate the offense alleged in Count 2.

(*Id.*, Ex. 25, Trial Tr. 35). Petitioner also affirmed that he understood that "a plea of guilty is a complete admission of . . . guilt" regarding those offenses. (*Id.*, Trial Tr. 36-37). Petitioner indicated that his attorney had "explained everything and answered all [his] questions" and that he was "satisfied with [his] attorney." (*Id.*, Trial Tr. 38). He also affirmed that he understood the nature of the charges against him and the potential maximum penalty he could receive. (*Id.*, Trial Tr. 39-41). After advising petitioner of the rights he was giving up by entering a guilty plea, and after obtaining assurances from petitioner that he understood and had signed the plea entry form "of his own free will" after going over it "thoroughly" and "in detail" with his attorney, who had answered all of his questions about it, the court found that petitioner's guilty plea was "knowing, intelligent and voluntary." (*See id.*, Trial Tr. 41-44). The court then accepted the plea and found petitioner guilty of the felonious assault offense charged in Count 2 and three-year firearm specification attached to that count. (*See id.*, Trial Tr. 44).

The sentencing hearing in Case No. B0901344 was held two weeks later on April 19, 2011, which was also the date set for petitioner's trial in Case No. B0906649-A. (*See id.*, Ex. 26, Trial Tr. 49). The hearing commenced with the following discussion about a matter that had arisen that day:

5

MS. DIEFFENBACH:  I went up to talk to Mr. Andrews, and he indicated to me he wanted to withdraw his plea. . . .  And he also indicated to me that his family had retained counsel, although nobody's contacted me. . . .  So I don't know his reasoning for wanting to withdraw the plea.  So . . . I don't know where to go from here.

THE COURT:  Well, I'll hear you or him.  I don't have any motion before me.

MS.  DIEFFENBACH:  I have nothing to say . . . because I would not have filed that and I guess this new attorney would have.  He apparently – somebody was apparently here today but they didn't stick around.

THE COURT:  Mr. Andrews, what's going on?

THE DEFENDANT:  I wish to withdraw my plea for the same reason because, you know, Ms. Roxann[e] told me that she was able to do certain things and she wasn't able to do, so I wasn't happy along with my family wasn't either.

THE COURT:  I can't understand a word you're saying.

THE DEFENDANT:  I wasn't happy with what she said she could do and what she couldn't do.  So my family wasn't happy with the situation either.  So that's what we took and –

THE COURT:  A couple of weeks ago you entered a plea – well, you had a trial.

THE DEFENDANT:  Yeah.

THE COURT:  A couple – a month or two ago, right?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  So you're going to be sentenced on that.  There was no plea that was entered on that.  Then there was other charges that you entered a plea a couple of weeks ago, and I spent a good amount of time, went over that plea form with you, went over your rights with you.  You told me you understood everything.  You wanted to accept the plea.  Remember all that?

THE DEFENDANT:  Yes, I do.

THE COURT:  Okay.  What's changed, sir?

THE DEFENDANT:  I just told you.

THE COURT:  Specifically, what's changed?

THE DEFENDANT:  She told me what she could beat and what she didn't –

THE COURT:  Well, what did I tell you?  I went over the plea with you, sir.

**\*\*\*\***

. . . .What did I go over with you has changed?. . .  I went over with you what I go over with everyone in that, are you entering this plea?. . .  Do you know the consequences, the penalties?  Are you doing this voluntarily?  Did anybody promise you anything or get you to enter this plea?  Do you remember all that, sir?

THE DEFENDANT:  Yeah.

**\*\*\*\***

THE COURT:  And you told me no, nobody promised you anything.

THE DEFENDANT:  Nobody didn't promise me nothing.

THE COURT:  Okay.  So why are you withdrawing your plea?

THE DEFENDANT:  I mean, I wasn't happy with her from the beginning anyway, so –

THE COURT:  No, sir.  Why are you withdrawing your plea from that time when I took a long time and went over everything with you?  What is it specifically you're not happy with?  Because you haven't been sentenced yet.

THE DEFENDANT:  I know.  I wasn't happy at the time anyway.  Get sentenced for something I didn't do.

THE COURT:  Okay.  You entered the guilty plea, for whatever reason.

THE DEFENDANT:  Uh-huh.

THE COURT:  You understood there was an agreement between you and the state for that plea, right?

THE DEFENDANT:  Yeah.

THE COURT:  And I told you I didn't have to follow that.  I could give you more.  I could give you less.  I could give you, you know, whatever I wanted.  Remember that?

THE DEFENDANT:  Yes, I do.

THE COURT:  And I said, you still want to enter the plea?  Do you remember that?

THE DEFENDANT:  Yes.

THE COURT:  And what did you say?

THE DEFENDANT:  I said yes.

THE COURT:  So what has changed?  What's she's promised, what she can do, what she couldn't do –

THE DEFENDANT:  She didn't promise.

THE COURT:  You're at the plea, past that.  You're here for sentencing today and you have not been sentenced.  So are you expecting something and thinking you're not getting something?  Or what exactly is it that you want that you're not getting?

THE DEFENDANT:  I'm not expecting nothing.  I just want my new counsel.

THE COURT:  Why?

****

THE DEFENDANT:  Because she told me what she could do and what she couldn't do, and I wasn't satisfied with that, really.

THE COURT:  When did that come up?  What is it that she told you she could do and couldn't do that you are not satisfied with?

THE DEFENDANT:  I mean, she told me she could probably beat the agg burglary, but she said she probably couldn't beat the felonious assault, and then all that.  She said she didn't really feel like going through the situation again anyway.

THE COURT:  Okay.  So she advised you of all that and you entered the plea anyway, right?

THE DEFENDANT:  Uh-huh.

THE COURT:  Is that a yes or a no?

THE DEFENDANT:  Yes.

THE COURT:  Okay.  So now what's happened?

THE DEFENDANT:  I'm still not satisfied with that.

(*Id.*, Trial Tr. 49-56).

After the trial judge expressed that petitioner's statements made "no sense," the following colloquy ensued regarding the new attorney who had allegedly been retained by petitioner's family to represent petitioner:

THE COURT:  . . . .Where's your new attorney?

THE DEFENDANT:  I don't know where he is.

THE COURT:  Who is your new attorney?

THE DEFENDANT:  Ted Knoebber.

THE COURT:  And he has not come in.  He's not here.  I don't know anything about that.  This is your day for sentencing, sir.

THE DEFENDANT:  I know.

THE COURT:  Okay.  So let's go.  You don't have a new attorney.

THE DEFENDANT:  My peoples been paying the money for nothing.

THE COURT:  Where is your attorney?

THE DEFENDANT:  He came to see me.  He's not here.

THE COURT:  Call Ted Knoebber, see if he's on this case.  We'll call him.  Did you tell him it was today for sentencing?

THE DEFENDANT:  Yeah, he just met with me Saturday.

****

THE COURT:  . . . .Did you tell him today was the day for sentencing?

THE DEFENDANT:  Yes.

THE COURT:  Did he tell you that he would take your case and that he –

THE DEFENDANT:  Yes.  He told me –

THE COURT:  -- put his designation on?

THE DEFENDANT:  Yeah.  And he told me that he also had other cases over here already anyway.

THE COURT:  Well, he's not here.

9

(*Id.*, Trial Tr. 56-58).

After a sidebar conference, the court then noted for the record that it was now close to two hours since the hearing had commenced and that "[w]e tried to call your supposedly new attorney, sir, and we're just getting his voice mail." (*Id.*, Trial Tr. 58). Pointing out that petitioner had acted on his own in moving to withdraw his guilty plea, the court next proceeded to question Roxanne Dieffenbach and found her "to be highly competent counsel." (*Id.*, Trial Tr. 59-61). The court further stated in addressing petitioner's *pro se* motion:

> I've known [Dieffenbach] personally and professionally for a number of years. Her reputation just is exceptional. So I've considered that.
>
> Whether the accused was given a full criminal 11 hearing before entering the plea. I – five, ten minutes, I don't know how long it was, I went over in great detail with the defendant as I've just done a few minutes ago.
>
> Specific questions about his plea. What a guilty plea meant. His education, his age, his ability to read and write. Any promises that were made to him.
>
> Had he received a copy of the indictment. Did he know what he was pleading to. The effects of the plea, the possible penalties, the maximum penalties, the consecutive and concurrent nature.
>
> The fact that there would be post-release control. The fact that there was an agreed sentence recommended by himself and counsel and the state.
>
> Also informed him that I didn't have to follow that, that I could give him any sentence that I wanted.
>
> He indicated he still wanted to enter the plea. Asked him if he had any questions. Asked him if he was on probation, parole, or post-release control.
>
> Specifically went over his rights to a speedy trial, to be represented by counsel, to a jury trial or a bench trial. The fact that the prosecutor had to prove beyond a reasonable doubt each and every element of the offense.
>
> The fact that his attorney could cross-examine any witnesses. The fact that his attorney could require witnesses to come to court for him. The fact that he did not have to testify during trial.
>
> I specifically asked him if he willingly was giving up those rights voluntarily. He indicated yes.

I then, in great detail, went over the plea form with him.  Asked if his signature was on the plea form.  If he understood it.  If he went over it with his attorney.

I even asked him if he was satisfied with his attorney, which he said yes.  And I asked him if he understood what the plea form meant.  And, in fact, if he understood what the plea form said.  He indicated yes to all of those questions.

And then I accepted his plea as being voluntary.

So I did give him Criminal Rule 11, and I think the record will bear that out.

Whether a full hearing was held on the motion, I think we're conducting a full hearing right now.

And whether the trial court gave full and fair consideration to the motion.  I have not heard a legitimate reason why the plea should be withdrawn other than he's not happy, that his attorney said she could do things that she couldn't do.  Although, I don't know what that is, and he certainly hasn't put that on the record.

(*Id.*, Trial Tr. 61-64).  When the court next indicated that petitioner had made his motion "within a reasonable time," the prosecutor interjected that the "state would argue that [the motion's] actually unreasonable at this point" because petitioner "didn't actually file a written motion, and he brought it up the day of sentencing."  (*Id.*, Trial Tr. 64-65).

At that point in the proceeding, petitioner asked the court to "[r]etain somebody else" and that he "need[ed] somebody else to represent [him]."  (*Id.*, Trial Tr. 65).  Petitioner also stated: "You only tried once to call [Ted Knoebber] anyway."  (*Id.*, Trial Tr. 65-66).  When the court explained that they had reached Knoebber's answering machine, petitioner requested that the matter be "set . . . for another day."  (*Id.*, Trial Tr. 66).  The court refused to reset the hearing date and, after engaging in a heated exchange with petitioner, overruled petitioner's *pro se* motion to withdraw his guilty plea, which was found to have been voluntarily entered, in the absence of "specific reasons" given for the oral request or any argument by petitioner that he was "not guilty of or had a complete defense to the charge."  (*See id.*, Trial Tr. 66-69).

The court then proceeded with sentencing.  (*Id.*, Trial Tr. 69).  When the court asked

11

petitioner whether he had anything to say regarding sentencing, petitioner again expressed that he "would like [his] new attorney to be here" and that he objected to the trial court's refusal to continue the matter "to another day." (*Id.*, Trial Tr. 70-71). After hearing from Ms. Dieffenbach and the prosecutor, the court sentenced petitioner in accordance with the plea agreement to an aggregate prison term of seven (7) years on the felonious assault charge and three-year firearm specification attached to that count, to be served consecutively to the sentence previously imposed in Case No. B1005259. (*Id.*, Trial Tr. 71). As part of the sentence, the court also ordered petitioner to pay $35,000 in restitution to Troy Davis and a $10,000 fine. (*Id.*, Trial Tr. 71-72). At the close of the hearing, the trial court granted Ms. Dieffenbach's motion to dismiss Case No. B0906649-A for want of prosecution. (*Id.*, Trial Tr. 74-75).

On April 29, 2011, the trial court issued the final judgment entry of sentence in Case No. B0901344 (*see id.*, Ex. 6), as well as the final entry dismissing the criminal charges in Case No. B0906649-A.[8]

### Delayed Appeal In Case No. B0901344: Ohio Court of Appeals

Petitioner did not pursue a timely appeal to the Ohio Court of Appeals from the April 29, 2011 judgment entry in Case No. B0901344. However, with the assistance of new counsel for appeal purposes, petitioner filed a notice of appeal and motion for delayed appeal to the Ohio Court of Appeals, First Appellate District, on November 15, 2011. (Doc. 10, Exs. 7-8). The Ohio Court of Appeals granted the motion for delayed appeal. (*See id.*, Ex. 29). In the brief that was subsequently filed by counsel on petitioner's behalf, petitioner presented five assignments of

---

[8] *See* https://courtclerk.org/case_summary.asp?sec=history&casenumber=B0906649-A. It is further noted that attorney Theodore Knoebber never entered an appearance in Case No. B0901344, nor was any written motion filed requesting the withdrawal of petitioner's guilty plea prior to his sentencing in April 2011. (*See* Doc. 10, Ex. 28). On October 7, 2011, over five months after petitioner was sentenced in Case No. B0901344, Knoebber filed a one-sentence motion to withdraw plea on petitioner's behalf without entering an appearance in the case. *See id.*; *see also* https://courtclerk.org/case_summary.asp?sec=history&casenumber=B0901344. The only arguments presented in support of the motion were contained in petitioner's affidavit, which was attached to the motion. *See* https://courtclerk.org/case_summary.asp?sec=history&casenumber=B0901344. Apparently, the post-sentence motion was denied. (*See* Doc. 10, Ex. 13, p. 3).

12

error:

1. The trial court erred to the prejudice of Defendant-Appellant in refusing to hold a hearing on Appellant's request to replace his court appointed attorney prior to trial in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

2. The trial court erred to the prejudice of the Appellant in failing to grant Appellant's request to remove his court appointed attorney and allow him to retain private counsel prior to sentencing and for failing to conduct a hearing on Appellant's request to do so in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

3. The trial court erred to the prejudice of the Defendant-Appellant in failing to grant his pre-sentence motion to withdraw his plea in violation of the Ohio Rules of Criminal Procedure and due process of law as guaranteed by the Fourteenth Amendment.

4. Appellant was deprived of his right to effective assistance of counsel.

5. The trial court erred to the prejudice of Appellant in imposing restitution that was not supported in the record and in failing to conduct a hearing upon the restitution amount and imposing a fine upon an indigent defendant in violation of the Ohio statutes and the Fourteenth Amendment of the United States Constitution.

(*Id.*, Ex. 9).

On October 10, 2012, the Ohio Court of Appeals issued an Opinion overruling petitioner's first, second and third assignments of error; overruling in part, but sustaining in part petitioner's fourth assignment of error to the extent that petitioner had claimed that his trial counsel was ineffective for failing to object to the restitution order and fine that was imposed as part of petitioner's sentence; and overruling in part, but sustaining in part petitioner's fifth assignment of error to the extent that "the trial court committed plain error in ordering [petitioner] to pay the fine and restitution" without considering petitioner's present or future ability to pay the fine or restitution. (*See id.*, Ex. 11). The court vacated "the fine and restitution that was imposed as part of [petitioner's] sentence" and remanded the matter to the trial court for a hearing on the petitioner's "present and future ability to pay a fine and restitution." (*Id.*, p. 13).

The trial court's judgment and sentence were affirmed, however, "in all other respects."  (*Id.*).

## State Proceedings: Resentencing In Case No. B0901344

In accordance with the Ohio Court of Appeals' remand order, a resentencing hearing was held on November 30, 2012 in Case No. B0901344, where evidence was presented and arguments heard on the issue of petitioner's ability to pay a fine and restitution.  (*See* Doc. 10, Ex. 27).  Petitioner was represented by new counsel, Daniel F. Burke, Jr., at that proceeding. (*See id.*).  After hearing petitioner's testimony and arguments by counsel, the trial court determined that "the fine and the restitution will remain the same."  (*Id.*, Resentencing Hearing Tr. 11).  A "Nunc Pro Tunc 11/30/2012" judgment entry was filed on August 14, 2013, wherein petitioner was resentenced to the same aggregate seven-year prison term and ordered, as in the original sentencing entry, to pay $35,000 in restitution to Troy Davis and a $10,000 fine.[9]  (*See id.*, Ex. 16).

With the assistance of new counsel, Scott A. Rubenstein, petitioner pursued a timely appeal from the resentencing decision to the Ohio Court of Appeals, First Appellate District. (*See id.*, Exs. 17-18).  On December 13, 2013, the Ohio Court of Appeals issued a Judgment Entry affirming that decision.  (*Id.*, Ex. 20).

On January 27, 2014, petitioner filed a *pro se* notice of appeal and memorandum in support of jurisdiction to the Ohio Supreme Court challenging the lower courts' rulings in the resentencing matter.  (*Id.*, Exs. 32-33).  According to the on-line docket record maintained by the Clerk of the Ohio Supreme Court for that appeal (Case No. 2014-0152), the Ohio Supreme Court declined to accept jurisdiction of the appeal on May 14, 2014.[10]

---

[9] It is noted that the resentencing entry states that attorney Scott A. Rubenstein represented petitioner at the November 30, 2012 resentencing hearing.  (*See* Doc. 10, Ex. 16).  However, it appears from the trial transcript that attorney Daniel F. Burke, Jr. represented petitioner at that hearing.  (*See id.*, Ex. 27).

[10] *See* http://www.supremecourt.ohio.gov/Clerk/ecms/resultsbycasenumber.

**Delayed Appeal In Case No. B0901344:  Ohio Supreme Court**

In the meantime, on January 31, 2013, petitioner filed a *pro se* notice of appeal and motion for leave to file a delayed appeal to the Ohio Supreme Court from the portion of the Ohio Court of Appeals' October 10, 2012 decision affirming the judgment of conviction and prison sentence in Case No. B0901344.  (*See* Doc. 10, Exs. 12-13).  Petitioner argued as cause for his delay in filing that he believed "no forward Appeal was needed" when the Ohio Court of Appeals issued its decision on October 10, 2012 given that "the Court of Appeals sent the case back to the Court of Common Pleas for resentencing, which itself would lead a reasonable person to believe that the sentence was not final."  (*Id.*, Ex. 13, p. 1).  Petitioner also contended that neither his appellate counsel nor the Ohio Court of Appeals informed him that "he must Appeal the portion of the case not reversed by the Court of Appeals" within 45 days of entry of that judgment.  (*Id.*, pp. 1-2).  Petitioner further averred that at the time of his resentencing, the trial court did not inform him "of any duties to continue the original Appeal" or "of his right to appeal the resentencing itself."  (*Id.*).  Petitioner stated that he first "learned of his duties owed and his right to file a delayed appeal on January 9, 2013, when he met with a Prison Law Clerk, who reviewed his documents and informed him of his rights and duties."  (*Id.*, p. 2).

On March 27, 2013, the Ohio Supreme Court denied petitioner's motion for delayed appeal and dismissed the matter without opinion.  (*Id.*, Ex. 15).

**Federal Habeas Corpus Petition**

The instant action commenced in October 2013 when petitioner filed his initial *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (*See* Doc. 1).  Petitioner filed an amended petition on January 14, 2014 (Doc. 6), which supersedes the initial petition.  *See Calhoun v. Bergh*, __F.3d __, No. 12-2509, 2014 WL 4922059, at *1 (6th Cir. Oct. 2, 2014) (and cases cited therein).

In this proceeding, petitioner challenges only the April 29, 2011 judgment entry of conviction and sentence following petitioner's entry of guilty plea to the felonious assault charge and attached three-year firearm specification in Case No. B0901344.  (*See* Docs. 1, 6).  In the superseding amended petition, petitioner presents the following claims for relief:

> **Ground One:**  Petitioner was denied his rights to Access to the Court under the First Amendment to the United States Constitution and his rights under the Due Process Clause under the Fourteenth Amendment to the United States Constitution, when both the appellate court and appellate counsel failed to inform petitioner of his appellate rights and the time and manner to effectuate a timely appeal with the Ohio Supreme Court and the Ohio Supreme Court denied his subsequent application for leave to file a delayed appeal.

> **Ground Two:**  Petitioner was denied his Sixth Amendment right to Counsel under the United States Constitution at a "critical" stage of the proceedings (pre-sentence motion to withdraw guilty plea) when counsel refuse[d] to represent the petitioner at the hearing.

> **Ground Three:**  Petitioner was denied his Sixth Amendment right to Counsel under the United States Constitution when the trial court denied him his right to the counsel of his choice by denying his motion to continue the proceedings to permit his newly retained counsel to assist him with his motion to withdraw his guilty plea and with the sentencing hearing.

> **Ground Four:**  Petitioner respectfully reserve[s] the right to amend this petition as to ground for relief four after receiving his transcript in the respondent's return of writ.  Petitioner suspect[s] there could be errors for but his memory does not serve him well and a review of the plea and sentencing transcript is need[ed] to formulate a meritorious argument.

(Doc. 6, pp. 8-9, 11-14, 16-17, 19).

In the return of writ filed in response to the amended petition, respondent states that petitioner was provided with "all transcripts" from the state trial proceedings.  (Doc. 10, Brief, p. 6).  Respondent also points out that although petitioner was informed in a notation order issued by this Court on March 27, 2014 that he had "30 days from the date of this Order in which to amend Ground Four of his amended petition or it shall stand as currently pled," no such amendment was ever filed.  (*See id.*, p. 7).  Respondent therefore contends that Ground Four of the amended petition is subject to dismissal because petitioner has not stated any claim for relief

16

in that ground.  (*Id.*, p. 14).  With respect to petitioner's remaining three claims, respondent argues that petitioner has not stated a cognizable claim for habeas relief in Ground One of the amended petition and that petitioner procedurally defaulted and has waived the federal constitutional claims alleged in Grounds Two and Three of the amended petition.  (*See id.*, pp. 9-15).

Petitioner has filed a "Traverse" in reply to the return of writ.  (Doc. 11).  In that pleading, petitioner addresses the claims asserted in Grounds One through Three of the amended petition.  (*See id.*).

## II.  OPINION

### A.  Ground Four Should Be Dismissed With Prejudice Because Petitioner Has Not Alleged Any Claim For Relief In That Section Of The Amended Petition

In Ground Four of the amended petition, petitioner merely reserved the right to assert a fourth claim for relief after reviewing the trial transcripts provided to him by the respondent for any other errors.  (Doc. 6, p. 19).  Respondent states that petitioner was provided with the transcripts from the trial proceedings.  (Doc. 10, Brief, p. 6).  Petitioner was also explicitly informed by the Court in a notation order issued March 27, 2014 that he was required to amend Ground Four within thirty (30) days or else the "amended petition . . . shall stand as currently pled."  Petitioner did not amend Ground Four within that 30-day period.  Moreover, although petitioner referred to Ground Four in his "Traverse" brief, he actually only addressed the issues raised in Grounds One through Three of the amended petition in his reply to the return of writ.  (*See* Doc. 11).

It, therefore, appears that petitioner has abandoned any fourth ground for federal habeas relief.  Accordingly, Ground Four should be dismissed with prejudice because petitioner did not amend that ground for relief to allege any additional claim of constitutional error in the challenged state court proceedings.

**B. The Claim In Ground One That Appellate Counsel And The Ohio Court Of Appeals Deprived Petitioner Of Access To And Appellate Review By The Ohio Supreme Court Does Not State A Cognizable Ground For Federal Habeas Relief**

In Ground One of the amended petition, petitioner alleges that his constitutional rights were violated by his appellate counsel and the Ohio Court of Appeals because they did not inform him about appealing the portion of the Ohio Court of Appeals' October 10, 2012 decision affirming the trial court's judgment of conviction and sentence to the Ohio Supreme Court, or of "the procedure and time limits involved with taking that appeal." (*See* Doc. 6, pp. 8-9; Doc. 11, pp. 16-20). Respondent contends that the ground for relief is not subject to review by this Court. (Doc. 10, Brief, p. 15). Respondent argues that because petitioner had no constitutional right to a discretionary appeal to the Ohio Supreme Court following his appeal to the Ohio Court of Appeals, any failure of his appellate counsel or the Ohio Court of Appeals to advise him about the discretionary appeal does not implicate constitutional concerns. (*Id.*). Respondent further asserts that to the extent petitioner alleges a denial of access to the courts, his claim is not "cognizable in habeas corpus because it does not challenge the fact or duration" of his custody. (*Id.*). Respondent's arguments have merit.[11]

This Court has jurisdiction to "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2254(a); *see also Wilson v. Corcoran*, 562 U.S. 1, 131 S.Ct. 13, 16 (2010) (per curiam)

---

[11] In addition, although respondent has not asserted a procedural-default waiver defense with respect to Ground One of the amended petition, a strong argument can be made that the ground for relief is barred from review because petitioner only raised the issues asserted therein to the Ohio Supreme Court as "cause" for his delay in filing rather than as an independent claim for relief by way of an application pursuant to Ohio R. App. P. 26(B) for reopening of the direct appeal. *Cf. Williams v. Turner*, No. 3:12cv2768, 2014 WL 4441409, at *1, *14-15 (N.D. Ohio Sept. 9, 2014) (citing *Goldberg v. Maloney*, 692 F.3d 534 (6th Cir. 2012)) (relying on the holding in *Goldberg*, 692 F.3d at 538, that the exhaustion requirement is not met for ineffective-assistance-of-appellate-counsel claims raised only in a discretionary appeal to the Ohio Supreme Court that is summarily dismissed, the district court ruled that the petitioner had procedurally defaulted his ineffective-assistance-of-appellate-counsel claim, which was also asserted as "cause" for his procedural default of other underlying grounds for habeas relief, because he only presented the claim as a proposition of law to the Ohio Supreme Court and did not file a timely Rule 26(B) application raising the claim).

(quoting *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991)) ("it is not the province of a federal court

to reexamine state-court determinations on state-law questions"); *Pulley v. Harris,* 465 U.S. 37,

41 (1984).  Petitioner's allegations do not give rise to a cognizable ground for federal habeas

relief under that statutory provision.

      First, to the extent that petitioner claims in Ground One that he is entitled to relief

because his appellate counsel and the Ohio Court of Appeals deprived him of his right to pursue

a discretionary appeal to the Ohio Supreme Court, plaintiff has not stated a cognizable claim of a

violation of the Fourteenth Amendment.  It is well-settled that the federal Constitution does not

impose any obligation on states to provide appellate review of criminal convictions.  *See Halbert*

*v. Michigan*, 545 U.S. 605, 610 (2005) (citing *McKane v. Durston*, 153 U.S. 684, 687 (1894));

*see also Evitts v. Lucey*, 469 U.S. 387, 393 (1985).  It is also well-settled that "if a State has

created appellate courts as 'an integral part of the . . . system for finally adjudicating the guilt or

innocence of a defendant,' . . . the procedures used in deciding appeals must comport with the

demands of the Due Process and Equal Protection Clauses" of the Fourteenth Amendment.

*Evitts*, 469 U.S. at 393 (quoting *Griffin v. Illinois*, 351 U.S. 12, 18 (1956)).  Therefore, the

Supreme Court has held that an appellant challenging his state criminal conviction or sentence is

entitled to federal constitutional protections, including the Sixth Amendment right to effective

assistance of counsel, when the state provides for an appeal as of right or first-tier review by an

intermediate court of appeals sitting in its error-correction capacity.  *See, e.g., Halbert*, 545 U.S.

at 616-23; *Evitts*, 469 U.S. at 392-93, 396-97.  However, in so ruling, the Supreme Court has also

made it clear that these constitutional protections do not extend beyond the appellant's appeal as

of right or first-tier appellate review to subsequent state discretionary appeals or collateral review

proceedings.  *See Coleman v. Thompson*, 501 U.S. 722, 755-57 (1991) (citing *Ross v. Moffitt*,

417 U.S. 600, 616 (1974); *Pennsylvania v. Finley*, 481 U.S. 551, 556 (1987)).[12]

In Ohio, the criminal defendant's first appeal of right in non-capital cases is a direct appeal to the Ohio Court of Appeals, where he has the constitutional right to effective assistance of counsel in prosecuting that appeal. *Browner v. Wolfe*, No. 1:05cv817, 2008 WL 1990457, at *14 (S.D. Ohio Apr. 30, 2008) (Spiegel, J.; Hogan, M.J.) (citing *State v. Vaughn*, 241 N.E.2d 288 (Ohio Ct. App. 1968)). Because the appeal in such cases constitutes the first-tier of appellate review in Ohio, the Fourteenth Amendment's protections do not extend to cover further discretionary review of the direct appeal decision by the Ohio Supreme Court.[13] *See id.*; *cf. Ross*, 417 U.S. at 610-12 (holding that because the Fourteenth Amendment's protections applicable to initial appeals of right do not extend to discretionary appeals to the state's highest court or to petitions for review by the United States Supreme Court, criminal defendants have no right to counsel in those subsequent proceedings).

Here, it is clear from the record that petitioner was not deprived of the opportunity to

---

[12] It is noted that in *Martinez v. Ryan*, __ U.S. __, 132 S.Ct. 1309, 1315 (2012), the Supreme Court pointed out that *Coleman* left open the question whether a case in which "state collateral review is the first place a prisoner can present a challenge to his conviction" should be treated as an "exception" to the general rule established in *Finley* "that there is no right to counsel in state collateral proceedings." *See also Coleman*, 501 U.S. at 755. The *Martinez* Court went on to state that *Coleman* "had suggested, though without holding, that the Constitution may require States to provide counsel in initial-review collateral proceedings," which constitute "the first place a prisoner can present a challenge to his conviction." *Martinez*, 132 S.Ct. at 1315 (citing *Coleman*, 501 U.S. at 755-56). However, as in *Coleman*, the *Martinez* Court expressly refused to resolve whether an exception exists in such cases "as a constitutional matter." *Id.* Instead, the *Martinez* Court issued a narrow ruling, qualifying *Coleman* only to the extent that either "no counsel" or inadequate assistance of counsel at "initial-review collateral proceedings" may constitute "cause" for a prisoner's procedural default of a ground for relief that could only be raised in a collateral review petition. *See id.* at 1315, 1320. In this case, the question left open by *Coleman* and *Martinez* need not be addressed because petitioner has not alleged a denial of the opportunity to have any claims heard in an initial-review collateral proceeding. Moreover, petitioner was not deprived of the opportunity for first-tier appellate review of his conviction and sentence, which he obtained in his delayed appeal to the Ohio Court of Appeals.

[13] In Ohio, an "appeal of right" to the Ohio Supreme Court is allowed in capital cases and cases that originated in the court of appeals. *See* Ohio S.Ct.Prac.R. 5.01(A). In contrast, "[j]urisdictional [a]ppeals" from intermediate appellate court decisions must be filed in cases involving the existence of a "substantial constitutional question," a felony or "a question of public or great general interest." *See* Ohio S.Ct.Prac.R. 5.02(A). The Ohio Supreme Court's Rules of Practice provide that the court has the discretion in jurisdictional appeals to determine whether or not to allow the appeal. *See* Ohio S.Ct.Prac.R. 7.08(B). This non-capital case, which originated in the trial court, does not involve an appeal of right to the Ohio Supreme Court. Petitioner could only obtain the Ohio Supreme Court's review by way of a "jurisdictional appeal" from the court of appeals' direct appeal decision. Therefore, further appellate review by the Ohio Supreme Court was discretionary in this case.

exercise his constitutional right of appeal. Indeed, even though petitioner failed to perfect a timely appeal of right to the Ohio Court of Appeals within thirty days of entry of the April 29, 2011 judgment of conviction and sentence as required by Ohio R. App. P. 4(A), he was still able to obtain appellate review of his conviction and sentence by that court with the assistance of counsel appointed to represent him for appeal purposes.

Petitioner does not claim in this case that his appellate counsel provided ineffective assistance in prosecuting his first-tier appeal to the Ohio Court of Appeals. Instead, petitioner contends that his counsel and/or the state appellate court had an additional duty to provide him with information about appealing the Ohio Court of Appeals' decision affirming his conviction and prison sentence to the Ohio Supreme Court to ensure he was not deprived of the opportunity to obtain further appellate review by the state's highest court. The Sixth Circuit has stated that "appellate counsel's duties do not terminate the moment the court of appeals hands down its decision," and that "[t]he Constitution requires 'that counsel make objectively reasonable choices' . . . not only *during* the legal proceeding for which the counsel represents the client, but also *after* the judicial proceeding has concluded in determining whether an appeal should be filed." *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 433-34 (6th Cir. 2006) (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 479 (2000)) (emphasis in original). In *Smith*, the Sixth Circuit held that appellate counsel's failure "to inform the accused of the resolution of a proceeding in a timely fashion so that the accused retains his control over the decision to appeal" constitutes "constitutionally deficient performance" that may serve as cause for the federal habeas petitioner's procedural default of claims that were addressed on direct appeal but not considered by the Ohio Supreme Court due to the untimeliness of the petitioner's appeal to that court. *Id.* at 434-35. The Sixth Circuit has also recently held that appellate counsel's failure to advise the accused about Ohio's time constraints for filing a petition for state post-conviction

relief amounted to ineffective assistance, which excused the habeas petitioner's procedural default of an ineffective-assistance-of-trial-counsel claim that could only be raised in the collateral review proceeding.  *See Gunner v. Welch*, 749 F.3d 511 (6th Cir. 2014).

Here, in contrast to *Smith* and *Gunner*, petitioner alleges in Ground One of the amended petition that his appellate counsel's ineffectiveness constitutes a ground for relief in and of itself. Neither the Supreme Court nor the Sixth Circuit has gone so far as to hold that appellate counsel's ineffectiveness in failing to perform a duty pertaining to a discretionary appeal to the state's highest court or a state collateral review proceeding amounts to a constitutional violation that may be remedied by this Court other than to the extent that the constitutionally deficient performance may serve to excuse the petitioner's procedural default of other separate underlying grounds for relief.  *Cf. Martinez v. Ryan*, __ U.S. __, 132 S.Ct. 1309, 1315, 1320 (2012) (expressly refusing to decide the question left open in *Coleman*, 501 U.S. at 755-56, as to whether cases in which "state collateral review is the first place a prisoner can present a challenge to his conviction" should be exempted "as a constitutional matter"  from the general rule established in *Finley* "that there is no right to counsel in state collateral proceedings"; instead, the Court issued the narrow ruling that either "no counsel" or  inadequate assistance of counsel at "initial-review collateral proceedings" may constitute cause for a prisoner's procedural default of a ground for relief that could only be raised in a collateral review petition). In *Roe*, 528 U.S. at 484, the Supreme Court held that "when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal."  However, *Roe* and other analogous cases are distinguishable from the case-at-hand because they all involved the alleged deprivation of the defendant's right to a first appeal as of right or first-tier appellate review to which the Fourteenth Amendment's protections attach.  *See,*

*e.g., Roe*, 528 U.S. at 483 (involving claim that trial counsel's "deficient performance deprived [the petitioner] of a notice of appeal, and hence, an appeal altogether"); *Rodriquez v. United States*, 395 U.S. 327, 328-30 (1969) (involving trial counsel's failure to file a notice of appeal requested by the defendant).  In this case, as discussed above, petitioner was not deprived of any constitutionally protected right of appeal.  Therefore, in the absence of any precedents suggesting that *Roe*'s holding extends outside the context of procedural default analysis to allow for habeas relief based on the deprivation of a discretionary appeal to the state's highest court, the undersigned concludes that the alleged deprivation does not give rise to a cognizable ground for relief that may be remedied in this federal habeas proceeding.  *See* 28 U.S.C. § 2254(a).

Similarly, petitioner's claim in Ground One that his appellate counsel and the Ohio Court of Appeals deprived him of his First Amendment right of access to the courts fails to state a cognizable claim for federal habeas relief.  The Supreme Court has made it clear in interpreting 28 U.S.C. § 2254(a) that "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  Federal habeas review, therefore, is limited to claims which dispute the "very fact or duration of the [petitioner's] confinement."  *See id.* at 500; *see also Kirby v. Dutton*, 794 F.2d 245, 247-48 (6th Cir. 1986) (and cases cited therein) (holding that complaints about deficiencies in state post-conviction proceedings are not cognizable grounds for federal habeas relief because they "address collateral matters and not the underlying state conviction giving rise to the prisoner's incarceration").  As respondent has argued, petitioner's claim that his appellate counsel and the state appellate court violated his First Amendment right of access to the courts by depriving him of the opportunity to pursue a timely appeal to the Ohio Supreme Court does not amount to a challenge to the fact or duration of his confinement.  *Cf. Wright v. Lazaroff*, 643 F. Supp.2d 971, 991-92 (S.D. Ohio

2009) (and cases cited therein); *Swafford v. Correction Corp. of America, Inc.*, No. 1:08cv202, 2008 WL 4646086, at *8 (E.D. Tenn. Oct. 17, 2008) (and cases cited therein).  Therefore, the claim is not cognizable in this proceeding.

### C. Petitioner Is Not Entitled To Relief Based On The Defaulted Claims In Grounds Two And Three Challenging His Trial Counsel's Failure To Assist With His Motion To Withdraw Guilty Plea And The Trial Court's Refusal To Continue Proceedings For New Counsel To Represent Petitioner At That Hearing

In Ground Two of the amended petition, petitioner claims that he was denied his Sixth Amendment right to counsel at a "critical stage" when his court-appointed attorney, Roxanne Dieffenbach, refused to assist or represent him at the April 19, 2011 hearing on his "pre-sentence motion to withdraw guilty plea."  (Doc. 6, pp. 11-14).  In Ground Three, petitioner alleges that he was denied his Sixth Amendment right to counsel of his own choice when the trial court denied his oral motion at that same hearing "to continue the proceedings to permit newly retained counsel," Theodore Knoebber, "to assist him with his motion to withdraw his guilty plea and with the sentencing hearing."  (*Id.*, pp. 16-17).   As respondent has contended in the return of writ (*see* Doc. 10, Brief, pp. 9-14), petitioner procedurally defaulted and has waived these claims for relief.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action.  *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971).  In order to satisfy the fair presentation requirement, the claims asserted in the federal habeas petition must be based on the same facts and same legal theories that were presented to the state courts.  *Carter v. Mitchell*, 693 F.3d 555, 568 (6th Cir. 2012) (citing *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Wong v. Money*, 142 F.3d

24

313, 322 (6th Cir. 1998)).  Moreover, a claim is deemed fairly presented only if the petitioner

presented his constitutional claims for relief to the state's highest court for consideration.  *See*

*O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483

(6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985).  If the petitioner fails

to fairly present his constitutional claims through the requisite levels of state appellate review to

the state's highest court, or commits some other procedural default that prevents a merit-based

review of the federal claims by the state's highest court, he may have waived the claims for

purposes of federal habeas review.  *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S.

255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v.*

*Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

 It is well-settled under the procedural default doctrine that the federal habeas court may

be barred from considering an issue of federal law from a judgment of a state court if the

judgment rests on a state-law ground that is both "independent" of the merits of the federal claim

and an "adequate" basis for the state court's decision.  *See Harris,* 489 U.S. at 260-62.  The

Supreme Court has stated:

> In all cases in which a state prisoner has defaulted his federal claims in state court
> pursuant to an independent and adequate state procedural rule, federal habeas
> review of the claims is barred unless the prisoner can demonstrate cause for the
> default, and actual prejudice as a result of the alleged violation of federal law, or
> demonstrate that failure to consider the claims will result in a fundamental
> miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  The Sixth Circuit employs a three-prong test

that was initially established in *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), to determine

if a claim is procedurally defaulted under the adequate and independent state ground doctrine:

> First, the court must determine that there is a state procedural rule that is
> applicable to the petitioner's claim and that the petitioner failed to comply with
> the rule. . . .  Second, the court must decide whether the state courts actually
> enforced the state procedural sanction. . . .  Third, the court must decide whether
> the state procedural forfeiture is an "adequate and independent" state ground on

which the state can rely to foreclose review of a federal constitutional claim. *Hoffner v. Bradshaw*, 622 F.3d 487, 495 (6th Cir. 2010) (quoting *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001) (in turn quoting *Maupin*)); *see also Johnson v. Bradshaw*, 493 F. App'x 666, 669 (6th Cir. 2012).  Under *Maupin* and as discussed above, if the three prerequisites are met for finding a claim is procedurally defaulted under the adequate and independent state ground doctrine, federal habeas corpus review of the defaulted claim is precluded unless the petitioner can demonstrate cause for and prejudice from his procedural default or that failure to consider the defaulted claim will result in a "fundamental miscarriage of justice."  *Hoffner*, 622 F.3d at 495 (citing *Maupin*, 785 F.2d at 138); *Johnson,* 493 F. App'x at 669.  *See also Coleman*, 501 U.S. at 750; *Harris,* 489 U.S. at 262; *Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, as respondent has argued, petitioner procedurally defaulted the claims that were presented to and decided by the Ohio Court of Appeals in its decision filed October 10, 2012, by failing to perfect a timely appeal from that decision to the Ohio Supreme Court. Although he missed the filing deadline, petitioner did seek leave to file a delayed appeal to the Ohio Supreme Court as permitted under Ohio S.Ct.Prac.R. 7.01(A)(4)(a).  Nevertheless, the claims alleged in Grounds Two and Three of the amended petition, which were addressed and rejected by the Ohio Court of Appeals in the October 10, 2012 decision, were defaulted by petitioner because the Ohio Supreme Court summarily denied petitioner's request for leave to file a delayed appeal.  (*See* Doc. 10, Ex. 15).

The Sixth Circuit has held that the Ohio Supreme Court's unexplained entry denying a motion for delayed appeal constitutes an adequate and independent state procedural ruling sufficient to bar review of a federal habeas corpus petition.  *Bonilla v. Hurley,* 370 F.3d 494, 497 (6th Cir. 2004) (per curiam).  In so holding, the Sixth Circuit reasoned that "the applicable Ohio

26

[Supreme Court] rules indicate that the denial of a motion for a delayed appeal is a procedural ruling, not a ruling on the merits." *Bonilla,* 370 F.3d at 497 (and unpublished Sixth Circuit cases cited therein).  The court explained:

> The Ohio Supreme Court Rules require a motion for a delayed appeal to state "the date of entry of the judgment being appealed and adequate reasons for the delay." Ohio Sup.Ct. R. II, Section 2(A)(4)(a).  In addition, the motion must be accompanied by a supporting affidavit and a "copy of the decision being appealed." *Id*.  A motion for a delayed appeal is not required to contain the actual claims and supporting arguments sought to be presented on appeal.  *Id*.  Instead, only when "the Supreme Court grants a motion for delayed appeal," is the appellant required to "file a memorandum in support of jurisdiction."  Ohio Sup.Ct. R. II, Section 2(A)(4)(c).  Thus, the applicable Ohio court rules indicate that the denial of a motion for a delayed appeal is a procedural ruling, not a ruling on the merits.

*Id.* at 497.[14]

As in *Bonilla*, petitioner failed to file a timely notice of appeal with the Ohio Supreme Court and his motion for leave to file a delayed appeal was denied by that court apparently because he did not provide adequate reasons for his delay in filing.  *See Bonilla,* 370 F.3d at 497. In this case, as in *Bonilla,* the Ohio Supreme Court was "entirely silent as to its reasons for denying [the] requested relief."  *Id.*  In such circumstances, it must be assumed that the state supreme court enforced the applicable procedural bar to review.  *Id.* (citing *Simpson v. Sparkman,* 94 F.3d 199, 203 (6th Cir. 1996)).

Because petitioner failed to comply with a state procedural rule, which was relied on by the Ohio Supreme Court in denying his motion for delayed appeal, the Ohio Supreme Court was not provided with an opportunity to consider the merits of the claims alleged in Grounds Two and Three of the amended petition.  Therefore, this Court's review of those claims is barred unless petitioner "can demonstrate cause for the default and actual prejudice . . . or demonstrate

---

[14] It is noted that since *Bonilla* was decided, the Ohio Supreme Court has made it even more clear that the denial of a delayed appeal motion is a procedural ruling, because the court's Rules of Practice now provide that the memorandum in support of jurisdiction setting forth the appellant's propositions of law "shall not be filed at the time a motion for delayed appeal is filed," but rather within thirty days *after* the appellant's request for leave to file a delayed appeal is granted.  *See* Ohio S.Ct.Prac.R. 7.01(A)(4)(b).

that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* at 497 (quoting *Coleman,* 501 U.S. at 750).

Petitioner has not demonstrated that failure to consider the claims alleged in Grounds Two and Three will result in a "fundamental miscarriage of justice," or in other words, that the alleged errors "probably resulted in the conviction of one who is actually innocent." *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995). To establish a credible claim of actual innocence sufficient to overcome a procedural bar to review, the petitioner must "establish in light of new evidence, 'it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt.'" *House v. Bell,* 547 U.S. 518, 536-37 (2006) (quoting *Schlup*, 513 U.S. at 327); *cf. Souter v. Jones*, 395 F.3d 577, 602 (6th Cir. 2005); *McSwain v. Davis,* 287 F. App'x 450, 458 (6th Cir. 2008). The standard is "demanding and permits review only in the 'extraordinary' case." *House,* 547 U.S. at 538 (quoting *Schlup,* 513 U.S. at 327). To be credible, a claim of actual innocence must be based on "new reliable evidence . . . that was not presented at trial." *Id.* at 537 (quoting *Schlup*, 513 U.S. at 324); *see also Calderon v. Thompson,* 523 U.S. 538, 559 (1998). Although petitioner generally argued to the trial court at the April 19, 2011 hearing that he did not commit the offense to which he pleaded guilty, such argument unsupported by "new reliable evidence" is simply insufficient to excuse the procedural bar to review in this case.

In addition, petitioner has not established cause for his procedural default. Petitioner has contended both in the instant proceeding and in his motion for delayed appeal to the Ohio Supreme Court that he was prevented from filing a timely appeal because he believed he had no right of appeal until after he was resentenced on November 30, 2012 and that his appellate counsel and the Ohio Court of Appeals failed to inform him that "he must Appeal the portion of the case not reversed by the Court of Appeals" within 45 days of entry of that judgment on

October 10, 2012.  (Doc. 10, Ex. 13, pp. 1-2; *see also* Doc. 6, pp. 8-9; Doc. 11, pp. 6-9, 12-15).
Petitioner has averred that he first "learned of his duties owed and his right to file a delayed
appeal on January 9, 2013, when he met with a Prison Law Clerk, who reviewed his documents
and informed him of his rights and duties."  (Doc. 10, Ex. 13, p. 2).

Petitioner has not established cause to the extent he contends that he was unable to
perfect a timely appeal to the Ohio Supreme Court because, as a *pro se* litigant in pursuing
further appellate review, he lacked knowledge of the law and the procedural requirements for
filing a timely appeal when the matter was remanded for resentencing on the issue of fines and
restitution.  In *Bonilla,* the Sixth Circuit rejected similar arguments, holding that the petitioner's
*pro se* status and ignorance of the law and procedural requirements for filing a timely appeal
were insufficient to establish cause for his delay in filing to the Ohio Supreme Court.  *Bonilla,*
370 F.3d at 498; *see also Hannah v. Conley,* 49 F.3d 1193, 1197 (6th Cir. 1995).  The fact that
the Ohio Court of Appeals did not inform petitioner about the deadline for pursuing a
discretionary appeal to the Ohio Supreme Court from its October 10, 2012 decision does not
change that result.  However, the Supreme Court has held that the ineffectiveness of appellate
counsel may constitute cause for a procedural default of claims presented in a federal habeas
petition.  *See Murray,* 477 U.S. at 488-89.  Therefore, a closer question is presented to the extent
petitioner has suggested that his appellate counsel was constitutionally ineffective for failing to
advise him about the discretionary appeal deadline date.

Over the past several years, the district courts in Ohio have consistently held that attorney
error amounting to ineffective assistance cannot constitute cause "where the error caused a
petitioner to default in a proceeding in which the petitioner was not constitutionally entitled to
counsel, including a discretionary appeal" to the state's highest court.  *See, e.g., Tanner v.
Jeffreys,* 516 F. Supp.2d 909, 916 (N.D. Ohio 2007) (quoting *Barkley v. Konteh,* 240 F. Supp.2d

708, 714 (N.D. Ohio 2002), in turn citing *Coleman,* 501 U.S. at 751-53); *see also Graggs v.*

*Warden, Lebanon Corr. Inst.*, No. 2:12cv190, 2013 WL 2404076, at *14 (S.D. Ohio May 30,

2013) (King, M.J.) (Report & Recommendation), *adopted*, 2013 WL 4479258 (S.D. Ohio Aug.

20, 2013) (Smith, J.); *Scott v. Warden, Southern Ohio Corr. Facility*, No. 1:12cv118, 2013 WL

2096641, at *4 (S.D. Ohio May 14, 2013) (Bowman, M.J.), *adopted*, 2013 WL 5728675 (S.D.

Ohio Oct. 22, 2013) (Bertelsman, J.); *Norris v. Warden, Oakwood Corr. Facility*, No. 1:10cv764,

2011 WL 5881189, at *9 (S.D. Ohio Oct. 21, 2011) (Litkovitz, M.J.) (Report &

Recommendation), *adopted*, 2011 WL 5878389 (S.D. Ohio Nov. 23, 2011) (Dlott, J.).[15]  Such

holdings have also found support in Sixth Circuit precedents.  *See, e.g., Doliboa v. Warden*, 503

F. App'x 358, 361 (6th Cir. 2012) (citing *Tolliver v. Sheets*, 594 F.3d 900, 929 (6th Cir. 2010),

and *Wainwright v. Torna*, 455 U.S. 586, 587 (1982), as support for holding that no cause for a

procedural default was established by counsel's erroneous advice to the petitioner that he not

"file with the state supreme court but should instead file a '2255' by himself"); *Wilson v. Hurley,*

382 F. App'x 471, 478-79 (6th Cir. 2010) (rejecting the argument that "appellate counsel's duty

to provide effective assistance during the first appeal of right carried with it the continuing duty

to notify Petitioner of the deadline for filing a Rule 26(B) application").

    As discussed above in addressing the claim alleged in Ground One of the amended

petition, the Sixth Circuit has held that the Sixth Amendment right to the effective assistance of

counsel on direct appeal does "not terminate the moment the court of appeals hands down its

decision," but extends to include the duty of informing one's client of the outcome of the

proceeding.  *See Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 433-35 (6th Cir. 2006).

---

[15]*Cf. Garrett v. Moore,* No. C-1-05-102, 2007 WL 315093, at *1, *5 (S.D. Ohio Jan. 30, 2007) (Weber, J.;
Hogan, M.J.) (holding that because the right to effective assistance of counsel does not extend beyond the first
appeal of right to a discretionary appeal, petitioner was unable to establish that the ineffectiveness of his counsel,
who represented him on discretionary appeal to the Ohio Supreme Court, in failing to assert all the claims of error
that had been raised to the Ohio Court of Appeals, constituted cause for his procedural default); *Whittsette v.
Gansheimer,* No. 1:08cv245, 2008 WL 4682656, at *3-4, *9-11 (N.D. Ohio Oct. 22, 2008) (same); *Wright v. Bobby,*
No. 1:05cv02870, 2008 WL 2484170, at *1, *17-18 (N.D. Ohio June 17, 2008) (same).

The Sixth Circuit has yet to rule, however, that appellate counsel's duties also include the obligation to advise the defendant about the requirements for pursuing a further discretionary appeal to the state's highest court.  Indeed, in *Wilson*, 382 F. App'x at 479, the Sixth Circuit pointed out that "unlike informing a client of the decision in a proceeding in which counsel represented that client," counsel's failure to inform a client of time requirements for pursuing further relief "does not relate to the continuation of the direct appeal."  More recently, the Sixth Circuit held that the petitioner's procedural default was excused by the ineffectiveness of his appellate counsel in failing to advise the petitioner of the deadline for filing a petition for post-conviction relief raising an ineffective-assistance-of-trial-counsel claim that could only be presented in the collateral proceeding.  *Gunner v. Welch*, 749 F.3d 511, 518-20 (6th Cir. 2014).  In so ruling, the Sixth Circuit explicitly referred to *Wilson* as "an unpublished opinion that does not constitute binding precedent."  *Id.* at 515.

However, as respondent has pointed out, *Gunner* is distinguishable from the case-at-hand.  Here, petitioner was afforded first-tier appellate review of the claims alleged in Grounds Two and Three of the amended petition by the Ohio Court of Appeals, whereas the petitioner in *Gunner* could only bring his defaulted ineffective-assistance-of-trial-counsel claim before the state courts for consideration in a post-conviction petition.  As noted above, *see supra* p. 20 n.12, in *Martinez v. Ryan*, __ U.S. __, 132 S.Ct. 1309, 1315 (2012), the Supreme Court expressed concern about those cases in which a state collateral review petition constitutes the "first place a prisoner can present a challenge to his conviction."  The Court, therefore, qualified its prior precedents by holding that either "no counsel" or inadequate assistance of counsel at "initial-review collateral proceedings" may constitute cause for a prisoner's procedural default of a ground for relief that could only be raised in a collateral review petition.  *Id.* at 1320.  Given the Supreme Court's concerns and holding in *Martinez*, the Sixth Circuit concluded in *Gunner* that

31

the failure of appellate counsel to inform the petitioner about the only available opportunity for
state-court review of his ineffective-assistance-of-trial-counsel claim or, more specifically, the
deadline for seeking such review constituted ineffective assistance that excused the petitioner's
procedural default. *Gunner*, 749 F.3d at 518-19.  The undersigned is reluctant to find that
*Gunner*'s holding and reasoning extend beyond the specific context addressed in that case and
*Martinez* of an initial-review collateral proceeding to abrogate the numerous prior decisions
holding that appellate counsel's failure to provide the petitioner with information about a
discretionary appeal to the Ohio Supreme Court cannot serve as cause for any procedural default
that occurs as a result of an untimely appeal to the state's highest court.

    In any event, even assuming that *Gunner*'s holding extends to the case-at-hand, petitioner
is unable to establish cause based on his ineffective-assistance-of-appellate-counsel claim
because that claim was also procedurally defaulted by him in the state courts.  "A claim that is
itself procedurally defaulted cannot be used as cause to excuse another procedurally defaulted
claim."  *Goldberg v. Money*, 692 F.3d 534, 537 (6th Cir. 2012) (citing *Edwards v. Carpenter,*
529 U.S. 446, 453 (2000)); *see also Hodges v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013),
*petition for cert. filed*, Nos. 13A1070, 14-5246 (U.S. July 14, 2014); *Landrum v. Mitchell,* 625
F.3d 905, 916, 934 (6th Cir. 2010).  *Cf. Williams v. Turner*, No. 3:12cv2768, 2014 WL 4441409,
at *15 (N.D. Ohio Sept. 9, 2014) (citing *Beuke v. Houk*, 537 F.3d 618, 631 (6th Cir. 2008) ("An
ineffective assistance of appellate counsel claim can serve as cause to excuse a procedural
default only if the ineffective assistance of appellate counsel claim is not itself procedurally
defaulted.").

    In *Goldberg*, the Sixth Circuit held that the petitioner procedurally defaulted an
ineffective-assistance-of-appellate claim that had been asserted as cause for his procedural
default of another claim, because he only raised the argument in a jurisdictional appeal to the

Ohio Supreme Court, which that court declined jurisdiction to hear and summarily dismissed. *Goldberg*, 692 F.3d at 537-38.  In so ruling, the court pointed out that Ohio R. App. P. 26(B) provides "a separate collateral opportunity" for defendants to raise ineffective-assistance-of-appellate-counsel claims by way of an application for reopening of the direct appeal to the Ohio Court of Appeals.  *Id.* at 537 (quoting *Morgan v. Eads*, 818 N.E.2d 1157, 1158 (Ohio 2004)). The court also pointed out that the Ohio Supreme Court made it clear in *Ohio v. Davis*, 894 N.E.2d 1221 (Ohio 2008), that a decision declining to accept a discretionary appeal raising a claim of ineffective assistance of appellate counsel does not constitute a determination by the Ohio Supreme Court on the merits of that claim.  *Id.*  Therefore, the Sixth Circuit reasoned that although a defendant may present such claims in both a timely appeal to the Ohio Supreme Court and a timely application under Rule 26(B) to the Ohio Court of Appeals, "raising a claim for ineffective assistance of appellate counsel in a discretionary appeal to the Ohio Supreme Court, without addressing the claim through Ohio Appellate Rule 26(B), does not satisfy the exhaustion requirement unless the Ohio Supreme Court addresses the issue on the merits."  *Id.* at 538.  The court determined that the petitioner had procedurally defaulted the ineffective-assistance-of-appellate-counsel claim because (1) the Ohio Supreme Court had declined jurisdiction and thus did not address the issue raised in the discretionary appeal, and (2) petitioner did not file an application for reopening of the direct appeal by the deadline date set forth in Ohio R. App. P. 26(B) and had "offered no cause for his delay" in filing such an application, which the court noted "would be difficult considering he was aware of the argument at the time he sought discretionary appeal."  *Id.* & n.3.

Recently, a district court in Ohio relied on *Goldberg* to similarly hold that the habeas petitioner had procedurally defaulted an ineffective-assistance-of-appellate-counsel claim raised in his petition both as a ground for relief and as cause to excuse his procedural default of other

habeas claims. *Williams*, *supra*, 2014 WL 4441409, at *14-15.  In that case, as in *Goldberg*, the

petitioner had asserted the claim as a proposition of law in a memorandum in support of

jurisdiction in a discretionary appeal to the Ohio Supreme Court that was summarily dismissed.

*See id.* at *6, *14.  As in *Goldberg*, the court concluded that the petitioner had failed to exhaust

the ineffective-assistance-of-appellate claim because he "did not file a Rule 26(B) application on

the issue." *Id.* at *14.  The court further determined that the claim was defaulted because the 90-

day deadline set forth in Ohio R. App. P. 26(B) for filing a timely reopening application had

passed and petitioner could not "assert that he was unaware of the claim since [he] raised it

before the Supreme Court of Ohio." *Id.*

In this case, petitioner also failed to exhaust his ineffective-assistance-of-appellate

counsel claim because he did not file a Rule 26(B) reopening application raising the claim and

only presented the issue in his delayed appeal motion to the Ohio Supreme Court as a

justification for his delay in filing and not as a constitutional violation.  In light of *Goldberg* and

*Williams*, where the ineffective-assistance-of-appellate-counsel claim was actually raised as a

claim of error in the petitioner's memorandum in support of jurisdiction to the Ohio Supreme

Court, the undersigned concludes that the Ohio Supreme Court's summary denial of petitioner's

motion for leave to file a delayed appeal did not constitute a decision on the merits of any claim

that appellate counsel's failure to inform petitioner about a further appeal to the Ohio Supreme

Court amounted to ineffective assistance under the Sixth Amendment.  Therefore, as in *Goldberg*

and *Williams*, the claim is procedurally defaulted because petitioner did not file a Rule 26(B)

reopening application raising the ineffective-assistance-of-appellate counsel claim within 90

days of entry of the appellate court's challenged judgment on October 10, 2012 and did not even

file a delayed application for reopening of the appeal after he, by his own admission, belatedly

discovered on January 9, 2013 that he had missed the deadline for perfecting a timely appeal to

the Ohio Supreme Court. (*See* Doc. 10, Ex. 13, p. 2). Petitioner cannot demonstrate cause for his failure to do so, particularly given that he was well aware of and asserted the argument in his motion filed on January 30, 2013 with the Ohio Supreme Court requesting leave to file a delayed appeal with that court. (*See id.*, pp. 1-2).

Accordingly, in sum, the undersigned concludes that petitioner procedurally defaulted and has waived the claims alleged in Grounds Two and Three of the amended petition as a result of his failure to perfect a timely appeal to the Ohio Supreme Court from the Ohio Court of Appeals' decision on October 10, 2012 rejecting those claims of error. Petitioner has not shown that a fundamental miscarriage of justice will occur if his claims are not considered by this Court. Moreover, petitioner has not demonstrated that cause exists to excuse the procedural bar to review. To the extent that petitioner has suggested that his appellate counsel was ineffective in failing to advise him about the requirements for seeking the Ohio Supreme Court's discretionary review of the appellate court's October 10, 2012 decision, the ineffective-assistance-of-appellate-counsel claim, which itself was procedurally defaulted by petitioner, cannot serve as cause to excuse his procedural default of the claims that were presented to and rejected by the Ohio Court of Appeals in that decision. Therefore, Grounds Two and Three of the amended petition are barred from review by this Court and should be dismissed with prejudice.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1), as amended (Doc. 6), be **DENIED** with prejudice.

2. A certificate of appealability should not issue with respect to the claims alleged in Ground One of the amended petition, which was addressed on the merits herein, and in Ground Four of the amended petition in the absence of a substantial showing that petitioner has stated a

"viable claim of the denial of a constitutional right" or that the issues presented in those grounds

for relief are "adequate to deserve encouragement to proceed further." *See Slack v. McDaniel,*

529 U.S. 473, 475 (2000) (citing *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983)); *see also*

28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

In addition, a certificate of appealability should not issue with respect to the claims

alleged in Grounds Two and Three of the amended petition, which this Court has concluded are

waived and thus procedurally barred from review, because under the first prong of the two-part

standard enunciated in *Slack,* 529 U.S. at 484-85, "jurists of reason" would not find it debatable

whether this Court is correct in its procedural ruling. Because the first prong of the *Slack* test has

not been met, the Court need not address the second prong of that test. Nevertheless, assuming

that "jurists of reason" could find the procedural ruling debatable, the undersigned further finds

that the second prong of the *Slack* test has not been met because "jurists of reason" would not

find it debatable whether petitioner has stated a viable constitutional claim in the defaulted

grounds for relief. *See id*. at 484.

Petitioner has not stated a viable claim in Ground Two that he was denied his Sixth

Amendment right to counsel because his court-appointed attorney, Roxanne Dieffenbach,

declined to support his *pro se* motion to withdraw guilty plea that was presented at the April 19,

2011 sentencing hearing, particularly given that petitioner merely suggested as the basis for his

motion that he and his family were not happy with Dieffenbach's advice regarding what could

and could not be done in defending against the criminal charges and did not dispute that, as the

record reflects, he nevertheless entered his guilty plea knowingly, voluntarily and intelligently.

*Cf. Hines v. Miller*, 318 F.3d 157 (2nd Cir. 2003) (and cases cited therein) (rejecting similar

claim on habeas review in the absence of any Supreme Court precedents specifically addressing

a claim, that a "petitioner was denied his right to counsel because he was effectively

unrepresented on his motion to withdraw his plea . . . or a claim that petitioner was denied the effective assistance of counsel because an actual conflict of interest [with respect to the plea withdrawal motion] adversely affected counsel's performance"); *see also Redd v. Woughter*, No. 09 Civ. 9819(PAE), 2012 WL 2864514, at *7 (S.D.N.Y. July 12, 2012).

Moreover, the record does not support petitioner's claim in Ground Three that he was deprived of his Sixth Amendment right to counsel of choice when the trial court denied his request to continue the April 19, 2011 sentencing hearing so that newly retained counsel, Theodore Knoebber, could represent him on his motion to withdraw his guilty plea and for sentencing purposes. Although petitioner represented to the trial court that his family had retained Knoebber to represent him, Knoebber did not file any presentence motion to withdraw plea or other motion on petitioner's behalf to be heard at the April 19, 2011 hearing; did not contact Roxanne Dieffenbach or the trial court to let them know that he had been retained and would be entering an appearance and filing a request to replace Dieffenbach as petitioner's counsel at the hearing; and neither entered an appearance nor attended the hearing or even responded to the court's attempt to contact him that day. Furthermore, Knoebber did not enter an appearance in the case after petitioner was sentenced and never sought to contest the trial court's rulings at the April 19, 2011 hearing on the ground that he should have been present to represent petitioner at that hearing. The one-sentence motion to withdraw plea that Knoebber filed on petitioner's behalf over five months later does not contain any statement confirming petitioner's assertion that he had been retained to represent petitioner at the April 19, 2011 hearing or to replace Dieffenbach as petitioner's trial counsel. Indeed, the only arguments submitted in support of that post-sentence motion were provided by petitioner in an affidavit attached to the motion merely reiterating the same general points that he had made to the court at the April 19,

2011 hearing. *See supra* p.12 n.8.[16] Therefore, it is clear from the record that the facts do not support the claim alleged in Ground Three of the amended petition that the trial court's failure to continue the April 19, 2011 hearing deprived petitioner of his constitutional right to counsel of choice. *Cf. Gilbert v. Hudson*, No. 1:08cv1867, 2009 WL 3246978, at *5-7 (N.D. Ohio Oct. 5, 2009) (and cases cited therein) (holding that although the Sixth Amendment does guarantee the right to counsel of choice for a defendant who has retained the services of an attorney and does not require appointed counsel, *see United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006), "the right to counsel of choice in situations where defendant requires court-appointed counsel, has **not** been recognized by the U.S. Supreme Court" and "do[es] not have a constitutional foundation") (emphasis in original).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith" and, therefore, should **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

s/Stephanie K. Bowman
Stephanie K. Bowman
United States Magistrate Judge

---

[16] *See also* https://courtclerk.org/case_summary.asp?sec=history&casenumber=B0901344.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

DEONDRE ANDREWS,                                    Case No. 1:13-cv-727
    Petitioner

      vs                                          Barrett, J.
                                        Bowman, M.J.

WARDEN, LEBANON
CORRECTIONAL INSTITUTION,
    Respondent

### NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

cbc